Larry David McALLISTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–99–00144–CR.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 7, 2000.

Decided Dec. 8, 2000.

Michael E. Jimerson, Henderson, for appellant.

Bill Saban, Asst. County Atty., Henderson, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Larry McAllister appeals his conviction for possession of a controlled substance in the amount of less than one gram, a state jail felony.[1] A jury found McAllister

---

1. TEX.HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (Vernon Supp.2000).

guilty, and the trial court sentenced him to two years' confinement and a $2,000 fine.

The record reveals that McAllister was a passenger in a vehicle that was stopped because it did not have a front license plate and had an expired inspection sticker. Officer Jesse Stewart discovered that the driver of the vehicle had an outstanding warrant; Stewart placed her in custody. In the course of the encounter, Stewart searched McAllister and discovered a crack pipe and cocaine.

McAllister challenged the legality of the search in a motion to suppress the cocaine and the crack pipe. The trial court overruled his motion. At trial, McAllister challenged the admissibility of a videotape made of the encounter and statements McAllister made on the videotape about a previous arson offense. The trial court overruled his objections. McAllister appeals those rulings.

 McAllister requests this court to review the videotape of the encounter, which was not before the trial court at the suppression hearing. On appellate review, we must examine the record as it existed at the time of the suppression hearing.[2] *O'Hara v. State,* 27 S.W.3d 548, 551 (Tex. Crim.App.2000); *Hoyos v. State,* 982 S.W.2d 419, 422 (Tex.Crim.App.1998); *Jones v. State,* 944 S.W.2d 642, 650–51 (Tex.Crim.App.1996); *Vargas v. State,* 838 S.W.2d 552, 556–57 (Tex.Crim.App.1992). Therefore, we will not consider the video-

tape or any of the other evidence relevant to suppression adduced at trial.

At the suppression hearing, McAllister testified to the following: After Stewart informed the driver that she had an outstanding warrant and would be placed in custody, he asked McAllister for identification. McAllister produced a State of Texas identification card and a penitentiary identification card. After Stewart checked for outstanding warrants, he told McAllister he was free to leave. McAllister walked about seven or eight feet away from Stewart when Stewart informed McAllister that he was going to drive McAllister home. McAllister told Stewart that he could walk and that his house was not that far, but Stewart grabbed him, insisted on driving him home, and told McAllister that he would have to search him.

After this, McAllister's testimony deviates. He first testified that Stewart gave him a pat-down search, and when he felt something, reached into McAllister's pockets and emptied their contents. He also testified that Stewart ordered him to empty his pockets. In either case, the search revealed the drugs and a crack pipe. Stewart did not have a warrant and did not have McAllister's permission to reach into his pockets.

Stewart gave a different account of the events, testifying as follows: He would not let McAllister drive the car because McAllister did not have a driver's license.

---

2. Prior to *O'Hara* the Court of Criminal Appeals held this rule was inapplicable where (1) the point of error complains of the admission of evidence at trial, and (2) the parties have consensually relitigated the issue at trial, i.e., where the state raises the issue at trial either without objection or·with subsequent participation in the inquiry by the defense. *Hardesty v. State,* 667 S.W.2d 130, 133 n. 6 (Tex.Crim.App.1984). In *Rachal v. State,* 917 S.W.2d 799, 809 (Tex.Crim.App.1996), the court reviewed evidence adduced at trial where the appellant's point of error complained about the trial court's ruling at the suppression hearing.

In *O'Hara,* the appellant's point of error complained of the trial court's failure to sup-

press evidence. *See O'Hara v. State,* 989 S.W.2d 132, 133 (Tex.App.—San Antonio 1999), *rev'd,* 27 S.W.3d 548 (Tex.Crim.App. 2000). On appeal, O'Hara referred to the officer's testimony during trial to support his contention that the trial court should have suppressed the evidence. The Court of Criminal Appeals held:

> [T]his testimony is irrelevant ... [because] it occurred at trial, not at the hearing on O'Hara's motion to suppress evidence. On appellate review, we must examine the record as it existed at the time of the suppression hearing.

*O'Hara,* 27 S.W.3d at 551.

McAllister then asked if Stewart would drive him two miles to his mother's house. Stewart agreed, but told McAllister that he would have to pat him down before allowing him to get into the patrol car. McAllister then raised his hands to about chest level, a gesture Stewart interpreted as indicating that he could "go ahead and pat him down." When he reached toward McAllister's left front pocket, however, McAllister put his hand in his pocket.

Stewart further testified that he asked McAllister what he had in his pocket, and McAllister told him he had a pocket knife. McAllister began to resist, and Stewart became alarmed and placed handcuffs on him. He then continued his pat-down search of McAllister at his right rear pocket. In that pocket he felt a bulge, which he later discovered was a crack pipe and a cigarette lighter. In McAllister's right front pocket, Stewart found a Ziploc baggy containing the cocaine.

 At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight of their testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex.Crim.App. 1996). Therefore, an appellate court must view the record and draw all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996). Furthermore, the appellate court must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.; Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

 The general rule is that an appellate court should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We are also to afford such deference to a trial

court's ruling on the "application of law to fact questions" if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* Questions not turning on credibility and demeanor may be reviewed by appellate courts *de novo. Id.*

In *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000), the Court of Criminal Appeals assumed that the trial court made implicit findings that buttressed its conclusions, provided those implicit findings were supported by the record. The court also reviewed *de novo* the trial court's application of the relevant Fourth Amendment standards. *Id.* We will apply this same standard.

 The parties dispute whether the search of McAllister was based on his consent. Under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant issued with probable cause is *per se* unreasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854, 858 (1973). Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Schneckloth*, 412 U.S. at 219, 93 S.Ct. 2041; *Carmouche*, 10 S.W.3d at 331.

 The test for a valid consent to search is that the consent be voluntary, which is a question of fact to be determined from all the circumstances. *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. 2041; *Carmouche*, 10 S.W.3d at 331. For consent to be voluntary, it must not be the product of duress or coercion, actual or implied. *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. 2041; *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App.1996), *overruled on other grounds, Guzman*, 955 S.W.2d at 90. In Texas, the State is required to prove by clear and convincing evidence that consent was voluntarily given. *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex.Crim.App.1997).

■ Reviewing the record in the light most favorable to the trial court's ruling, we find that the State met its burden of demonstrating by clear and convincing evidence that McAllister consented to a search. Stewart testified that it is not unusual for him to drive the passenger of a vehicle home when he arrests the driver. He explained to McAllister that he would need to do a pat-down search before he let McAllister into his patrol car. When so informed, McAllister raised his arms about chest high. There is sufficient evidence that McAllister was under no compulsion to accept a ride from Stewart; in fact, he was free to leave. When he raised his hands, he indicated that Stewart was free to proceed with a pat-down search.

■ Having decided that McAllister consented to the search, we need not decide whether the search was valid under another theory, such as a *Terry* frisk. However, when a person voluntarily consents to a search, the officer's authority to perform the search is not without limit. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297, 300 (1991); *DuBose*, 915 S.W.2d at 496. The extent of the search is limited to the scope of the consent given, and the scope of the consent is generally defined by its expressed object. *Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801; *DuBose*, 915 S.W.2d at 496. The standard for measuring the scope of consent is that of objective reasonableness, i.e., what a reasonable person would have understood by the exchange between the officer and the individual. *Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801; *DuBose*, 915 S.W.2d at 496. A reasonable person in McAllister's position would have understood this to include only a pat down of McAllister's outer clothing to ensure that Stewart would be safe in allowing McAllister to ride with him.

We now must decide whether Stewart was justified in reaching into McAllister's pocket for the crack pipe and the Ziploc baggy containing cocaine. Stewart testified at the suppression hearing as follows:

[PROSECUTOR ON DIRECT EXAMINATION]:

Q. After you handcuffed him, what did you do?

A. I continued with the pat-down for weapons. At that point, he was, of course, behind me. I placed the handcuffs on him.

Q. He was behind you?

A. I'm sorry, his back was to me. His back was to me. The first place I checked was his right rear pocket, because like I say, his behind was towards me. And his right front, right rear pants pocket, I felt a bulge in there, and when I took the bulge out, it was a crack pipe and, I believe, it was a cigarette lighter.

. . . .

Q. Did you find anything else in his pockets?

A. No, not in his right rear pocket. That's all I found. I continued my search. In his right front pants pocket, I found a small Ziploc baggy with—I believe it was five small rocks of what I believed to be crack cocaine.

. . . .

[DEFENSE ATTORNEY ON CROSS–EXAMINATION]:

Q. This controlled substance found on Mr. McAllister, alleged controlled substance, that was found in a pocket by itself?

A. Correct. In his right front pocket.

Q. And did you feel that prior to obtaining it in his pocket?

A. I don't believe I did. Once I found the crack pipe, then I just checked his other pocket.

Q. Clearly, that alleged controlled substance, it wouldn't feel like a weapon, correct?

A. That's correct.

. . . .

Q. Well, my point being, [the crack pipe] doesn't feel like a pistol, does it?

A. No. Well, it depends. If you have a—not a normal sized pistol like what I carry on my belt, but there are pistols that are made that are real short that carry one bullet that can shoot one time, like a homemade type of pistol.

Q. *So it's your testimony that [what feels like] about half of a regular sized ballpoint pen, to you feeling in his pocket, might feel like a weapon?*

A. *Yes, sir.*

. . . .

[PROSECUTOR ON REDIRECT]:

Q. And what did you find in that very first pocket?

A. A crack pipe and a cigarette lighter.

Q. *Could you tell what it was by squeezing the pocket, the contents of that pocket? Could you tell what it was?*

A. *No, sir.*

Q. You testified earlier about small pistols containing single shots. Could that have been a small pistol?

A. Yes, sir, it could have.

Q. Have a long barrel?

A. Yes, sir. Plus, you know, had the cigarette lighter in there, too, so could have been two weapons.

(Emphasis added.)

The discovery of the crack pipe provided Stewart with probable cause to further search McAllister. The seizure of the cocaine was based on the discovery of the crack pipe. Therefore, the legality of the seizure of the cocaine hinges on the legality of the search that uncovered the crack pipe.

The United States Supreme Court has held that "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons...." *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334, 346 (1993). Not only must the item's identity be immediately apparent, but also its incriminating nature. *State v. Davis,* 988 S.W.2d 466, 467 (Tex.App.—Houston [1st Dist.] 1999, no pet.); *In re L.R.,* 975 S.W.2d 656, 659 (Tex.App.—San Antonio 1998, no pet.); *Graham v. State,* 893 S.W.2d 4, 8 (Tex. App.—Dallas 1994, no pet.); *Campbell v. State,* 864 S.W.2d 223, 226 (Tex.App.—Waco 1993, pet. ref'd); *see also Dickerson,* 508 U.S. at 378–79, 113 S.Ct. 2130 (analogizing the plain feel exception to the plain view exception, which requires that the incriminating nature of the items be immediately apparent).

However, the cases requiring that the incriminating nature of the item be immediately apparent do not apply to the finding of a suspected weapon, but rather to the identity of contraband other than a weapon. This distinguishes the present case from the line of cases applying the plain feel exception, because in the present case Stewart's first determination was based on feeling an object that might have been a weapon.

The United States Supreme Court has stated it would be unreasonable to deny an officer the power to determine whether a person is carrying a weapon and to neutralize the threat of harm, so long as the officer has a reasonable suspicion based on articulable facts that the person is armed and presently dangerous. *Terry v. Ohio,* 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889, 908 (1968). A search for weapons must be narrow in scope and limited to that which is necessary for the discovery of weapons that are readily accessible. *Id.* at 26, 29, 88 S.Ct. 1868.

The Court of Criminal Appeals has commented that "[i]f in the course of a pat-down frisk the officer satisfies himself that the suspect has no weapons, the officer has no valid reason to further invade the suspect's right to be free of police intrusion absent probable cause to arrest." *Lippert v. State,* 664 S.W.2d 712, 721 (Tex. Crim.App.1984). One court of appeals has

held that it is unlawful for an officer to remove the contents of a detainee's pocket after a pat-down search that does not produce a reasonable suspicion that a weapon is being concealed. *Thomas v. State*, 853 S.W.2d 734, 736 (Tex.App.—Houston [1st Dist.] 1993, no pet.). The converse is also true; that is, if the officer has not satisfied his reasonable suspicion that the suspect is armed, then he has a right to make a more intrusive search to ensure that no weapon is accessible. *United States v. Thompson*, 597 F.2d 187, 191 (9th Cir.1979); *People v. Mosher*, 1 Cal.3d 379, 82 Cal.Rptr. 379, 461 P.2d 659, 668 (1969); *People v. Gunsaullus*, 72 Ill.App.3d 440, 28 Ill.Dec. 943, 391 N.E.2d 142, 146–47 (1979); *State v. Hudson*, 124 Wash.2d 107, 874 P.2d 160, 163 (1994); *see also* 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 11.47 (1995).

In *Salazar v. State*, 893 S.W.2d 138, 144 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd, untimely filed), the officer conducted a pat-down search and felt an object that appeared to be a knife. He reached in the suspect's pocket and pulled out a knife and a plastic bag of narcotics. *Id.* The court held that once the pat down confirmed that the object had the characteristics of a weapon, the officer was justified in reaching into the suspect's pocket and removing its contents. *Id.*

■ In the present case, Stewart's pat-down search, which began pursuant to McAllister's consent, escalated because of McAllister's movement toward his left pants pocket and his efforts to resist. Stewart testified that he feared for his safety, and in fact handcuffed McAllister for his protection. These circumstances, coupled with Stewart's testimony that he felt an object that might be a weapon, justified an extension of the pat-down search and the resulting discovery of the controlled substance.

In his second point of error, McAllister contends that the trial court erred in admitting the videotape into evidence. The videotape contains statements by McAllis-

ter concerning a previous arson offense and time he spent in the penitentiary for that offense. McAllister filed a motion in limine seeking to prevent the use at trial of both the videotape and the statements made on the videotape. The trial court overruled the motion.

The court did agree, however, to provide an instruction to the jury that they were not to consider any evidence of McAllister's prior conviction or prior imprisonment as evidence of his guilt for the charged offense. Nevertheless, McAllister renewed his objection when the videotape was offered into evidence, and when his objection was overruled moved for a mistrial, contending that a limiting instruction would be insufficient to remedy the harm. The trial court overruled that motion.

McAllister contends on appeal, as he did at trial, that the statements on the videotape are inadmissible under TEX.R.EVID. 403 and 404(b) and that the videotape was the fruit of an illegal search. As to the latter contention, we overrule it because we have already held that the trial court did not err in upholding the legality of the search.

■ As to the former contention, the general rule is that evidence of other crimes, wrongs, or acts is inadmissible to prove a person's character, but evidence of other crimes, wrongs, or acts is admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R.EVID. 404(b). If a Rule 404(b) objection is made to extraneous offense evidence, the proponent of the evidence must persuade the trial court that the evidence has relevance apart from character conformity, e.g., that it tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity, or preparation leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing the absence of mistake or accident. *Mont-*

*gomery v. State,* 810 S.W.2d 372, 387–88 (Tex.Crim.App.1990) (opinion on reh'g); *Powell v. State,* 5 S.W.3d 369, 383 (Tex. App.—Texarkana 1999, pet. ref'd), *cert. denied,* 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000). If the trial court overrules an objection to the admissibility of the evidence under Rule 404(b), the objecting party must also make a Rule 403 objection, explaining that the prejudicial potential substantially outweighs the probative value of the evidence, in order to preserve error. TEX.R.EVID. 403; *Montgomery,* 810 S.W.2d at 387–88; *Powell,* 5 S.W.3d at 383.

██ In the present case, McAllister objected to the statements made on the videotape under both Rule 403 and Rule 404(b). The State did not offer any permissible purpose for the evidence of the arson offense, and we can discern none. Therefore, the trial court erred in failing to exclude it.

The State observes that McAllister never requested that the statements be redacted from the videotape. However, McAllister's objection was specific enough to put the trial court on notice of his objection.

██ Nevertheless, the failure to suppress the evidence of the previous arson offense was harmless in that it did not affect McAllister's substantial rights as set forth in TEX.R.APP.P. 44.2(b). The offense was mentioned only briefly on the videotape. In contrast, the jury was confronted by videotape evidence of the discovery of the cocaine on McAllister. The trial court also gave a limiting instruction to the jury to prevent its consideration of the other offense. We presume the jury followed the instruction. *Colburn v. State,* 966 S.W.2d 511, 512 (Tex.Crim.App.1998). We overrule McAllister's second point of error.

The trial court's judgment is affirmed.