**Elmonzo Kenkay FARMER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–00–00160–CR.

Court of Appeals of Texas,
Texarkana.

Submitted May 7, 2001.

Decided May 23, 2001.

Ebb B. Mobley, Longview, for appellant.

Andy Porter, Asst. Dist. Atty., Longview, for State.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Elmonzo Farmer appeals his conviction for possession of cocaine in an amount greater than or equal to four grams, but less than 200 grams, a first degree felony. TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Vernon Supp.2001). The punishment range for the offense was enhanced by a finding that Farmer had previously been convicted of a felony. TEX.

PEN.CODE ANN. § 12.42(c)(1) (Vernon Supp. 2001).

Farmer filed a motion to suppress the cocaine obtained during a search of his person.[1] The trial court overruled his motion after a hearing. Thereafter, Farmer pleaded guilty. The trial court sentenced him to forty years' confinement.

On appeal, Farmer contends the trial court erred in overruling his motion to suppress the cocaine. At the suppression hearing, Officer James Benson testified as follows. Around 2:00 a.m., he was posted on Interstate 20, a main corridor for narcotics trafficking. He witnessed a car traveling sixty-nine miles per hour in a sixty-five mile-per-hour zone. He stopped the car, identified the driver as Scotty Epps, and asked him to step to the rear of the vehicle. Epps told him the car belonged to Willie Farmer, who was not one of his two passengers. He also told Benson the three of them were driving back to Louisiana from Dallas, where they had spent the weekend after driving Epps's girlfriend to her home. Benson later determined the car was registered to Farmer.

Benson next spoke to Epps's passengers to get their names and determine if they had any outstanding warrants. The passenger in the front seat of the car had a Louisiana driver's license identifying him as Charlie Buchanan. He told Benson they were returning from a one-day trip to Dallas, where they had driven "a buddy of theirs home, not a girl." The passenger in the backseat, who was later identified as Farmer, identified himself as Carlton Frost, but he was not carrying a driver's license. Benson testified that Farmer hesitated as he recited his date of birth, "as

---

1. Farmer also filed a motion to suppress a statement he made to police. In his motion, he contended his statement was the product of coercion and an illegal arrest. The trial court overruled his motion. On appeal, Farmer abandons these contentions.

though he really didn't know what it was and was making it up as he went along."

Benson returned to Epps and asked him the identity of the passenger in the back-seat, and Epps said "he *believed* the guy's last name—I want to say he said Carl or something to that effect." (Emphasis added). Benson was unable to get any information from a records check on the name "Carlton Frost," but was able to determine that Epps had a prior arrest for marihuana possession. He again asked Farmer his identity, but Farmer replied that his name was "Carlton Frost." Finally, Benson again asked Epps the name of the passenger in the backseat and, this time Epps told him the man's name was Carl Willie Farmer, but he also told Benson that it was not the Willie Farmer who owned the vehicle. By this time, two other officers had arrived on the scene.

Suspicious that the men were engaged in narcotics trafficking, Benson asked for and received Epps's permission to search the car. He asked Farmer to step out of the car and conducted a pat-down search of his person. He felt a large object below Farmer's waistline and above his groin area. He put Farmer in handcuffs, opened the front of his pants, and found a bag of cocaine taped to his body. Benson seized the cocaine and placed Farmer under arrest.

■ At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight of their testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex.Crim.App. 1996). Therefore, an appellate court must view the record and draw all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996). Furthermore, the appellate court must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.; Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

■ The general rule is that an appellate court should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We are also to afford such deference to a trial court's ruling on the "application of law to fact questions" if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* Questions not turning on credibility and demeanor may be reviewed by appellate courts *de novo. Id.*

■ The parties do not dispute that the initial traffic stop was lawful. Benson witnessed the car traveling in excess of the posted speed limit, which is prima facie evidence of a traffic violation. Tex. Transp. Code Ann. § 545.351 (Vernon 1999), § 545.352(b)(2) (Vernon Supp.2001). A police officer may lawfully stop a motorist who commits a traffic violation. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim.App.1993).

The State contends Farmer was not detained when Benson first approached him to ask his name; rather, the State contends this was a mere "encounter" with police. *See Florida v. Bostick*, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389, 400 (1991) (whether a seizure of a passenger on a bus occurred when police boarded the bus and asked to search his bags depended on "whether a reasonable person would feel free to decline the officers' request or otherwise terminate the encounter"); *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229, 236 (1983)

("law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen"). In any event, the State admits, and we agree, that this "encounter" escalated into an investigative detention when Benson became suspicious about the responses Farmer gave regarding his identity.

■■■ Farmer contends Benson did not have probable cause to detain him. An investigative detention is a seizure, *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim.App.1996); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App.1995); thus, it must be reasonable to meet the standards required by the United States and Texas Constitutions. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. To determine the reasonableness of an investigative detention, we apply the guidelines set out by the United States Supreme Court in *Terry v. Ohio:* (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that initially justified the interference. *See Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim.App.1997) (citing *Terry v. Ohio*, 392 U.S. 1, 19 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Farmer does not contend the detention was excessive in scope; rather, he

contends it was not justified at its inception.

■■■ To make an investigative detention, an officer must have a reasonable suspicion; that is, the officer must be able to point to specific, articulable facts that, taken together with rational inferences from those facts, reasonably warrant the detention. *Davis*, 947 S.W.2d at 242–43. In evaluating the reasonableness of an investigative detention, we must apply an objective standard by asking whether in light of the officer's experience, the facts available would justify a person of reasonable caution in believing the action taken was appropriate. *Id.* at 243. Reasonable suspicion requires "that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime." *Id.* at 244 (quoting *Viveros v. State*, 828 S.W.2d 2, 4 (Tex.Crim.App. 1992)).

Benson's detention of Farmer was lawful. Benson testified that Interstate 20 is a corridor for narcotics traffic. Epps and Buchanan gave inconsistent explanations regarding their travels. Farmer identified himself as Carlton Frost, but answered haltingly and hesitantly when asked his date of birth. When Benson asked Epps the name of the passenger in the backseat, Epps gave an answer that indicated he was not certain, but later identified the passenger as Carl Willie Farmer. These events provided Benson with the requisite reasonable suspicion to detain Farmer and investigate further.[2]

**2.** The parties dispute the applicability of Texas Penal Code Section 38.02(b), which makes it an offense to intentionally give a false or fictitious name, address, or date of birth to a peace officer who has (1) lawfully arrested the person, (2) lawfully detained the person, or (3) requested the information from a person the peace officer has good cause to believe is a witness to a criminal offense. TEX. PEN.CODE ANN. § 38.02(b) (Vernon 1994). Farmer contends the statute is inapplicable because he

was not lawfully arrested or detained when Benson asked his identity. The State contends that as a witness to a traffic violation, Farmer committed an offense when he misidentified himself. Nevertheless, the State does not claim Farmer was arrested when Benson searched him; thus, the State does not argue the search was permissible as incident to a lawful arrest. Therefore, whether Farmer violated Section 38.02(b) is immaterial in view of our conclusion that Benson had

■ The next question is whether the search of Farmer's person was justified in the absence of a warrant. The United States Constitution protects individuals from unreasonable searches and seizures. U.S. CONST. amend IV. Under the Fourth and Fourteenth Amendments, a search conducted without a warrant supported by probable cause is per se unreasonable, unless a recognized exception to the warrant requirement applies. *Reasor v. State*, 12 S.W.3d 813, 817 (Tex.Crim. App.2000).

■ One such exception, which the State argues applies here, occurs when an officer is justified in believing that an individual is armed and presently dangerous. *Terry*, 392 U.S. at 24, 88 S.Ct. 1868; *O'Hara v. State*, 27 S.W.3d 548, 550 (Tex. Crim.App.2000). In that situation, the officer may conduct a limited pat-down search of the person's outer clothing to determine whether the person is carrying a weapon. *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334, 344 (1993); *O'Hara*, 27 S.W.3d at 550.

■ Before conducting such a search, an officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrants the search. *Terry*, 392 U.S. at 21, 88 S.Ct. 1868; *O'Hara*, 27 S.W.3d at 551. The United States Supreme Court has been careful to maintain the narrow scope of the protective search exception. *Ybarra v. Illinois*, 444 U.S. 85, 93, 100 S.Ct. 338, 62 L.Ed.2d 238, 247 (1979); *O'Hara*, 27 S.W.3d at 550.

■ Farmer contends there is no evidence in the record that Benson had any fear for his safety. However, the relevant inquiry is not whether the officer had a subjective fear for his safety; rather, we must determine whether a reasonably prudent person in the officer's position would be warranted in the belief that his safety or the safety of others was in danger. *Terry*, 392 U.S. at 27, 88 S.Ct. 1868; *O'Hara*, 27 S.W.3d at 551.

The State contends the facts available to Benson would justify a reasonable person's belief that his safety was in danger. Specifically, the State points to evidence that Interstate 20 is a corridor for narcotics traffic, that it was late at night, that Farmer lied about his identify, that Epps and Buchanan had given inconsistent explanations regarding their travels, and that Epps had a previous arrest for marihuana possession. In addition, Benson testified he suspected the three men were engaged in narcotics trafficking and that Farmer might be a fugitive.

In *Carmouche v. State*, 10 S.W.3d 323, 326 (Tex.Crim.App.2000), an informant told police she would be riding with the defendant from Houston to Nacogdoches, and the defendant would be carrying ten ounces of cocaine. Officers identified the vehicle and pulled it over after observing the driver violate a traffic law. *Id.* An officer ordered the defendant and the informant from the car and received the defendant's consent to search it. *Id.* at 326–27. The officer did not find any contraband in the interior of the car or in the trunk. *Id.* at 327. However, having been instructed by the informant to search the defendant, the officer patted him down and found over $1,900 in his front pocket. *Id.* A later pat-down search of the defendant revealed the cocaine. *Id.* Regarding the initial pat-down search that revealed the money, the officer testified

[DEFENSE COUNSEL]: But you weren't concerned at that very moment about your protection, you had two officers with weapons—

a reasonable suspicion sufficient to detain Farmer in order to investigate further.

[TROOPER LARGENT]: Well, Counselor, like I say, I'm always concerned because things happen and they happen quick.

[DEFENSE COUNSEL]: But when you told Mr. Carmouche that you were doing it for your protection, you really weren't, you were doing it so you could see if he had any contraband on his person; right?

[TROOPER LARGENT]: I was doing it for protection, checking him also for the narcotics, both.

*Id.* at 329–30.

The Texas Court of Criminal Appeals held that the officer's concern for his safety was objectively reasonable under the circumstances. *Id.* at 330. The court noted that roadside encounters between police and suspects are especially hazardous. *Id.* (quoting *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201, 1220 (1983).) In addition, the court noted that an officer's reasonable belief that a suspect is armed and dangerous may be predicated on the nature of the suspected criminal activity. *Id.* (citing *Terry,* 392 U.S. at 27–28, 88 S.Ct. 1868). Finally, the court noted that weapons and violence are often associated with narcotics transactions. *Id.* (quoting *United States v. Brown,* 913 F.2d 570, 572 (8th Cir.1990)).

*Carmouche* is factually similar to the present case. As in *Carmouche,* Benson suspected Farmer and the others were engaged in narcotics trafficking. As in *Carmouche,* two other police officers were on the scene; however, in the present case there were also two other suspects in the car, which made Benson's need to secure the situation more imperative. The officer in *Carmouche* testified he conducted the pat-down search, at least in part, because he was concerned for his safety. Here, Benson testified he suspected that Farmer might be a fugitive and he wanted to en-

sure Farmer did not have any weapons. In *Carmouche,* the pat-down search occurred after the officer had searched the interior of the car. Here, the pat-down search occurred before Benson searched the car. Thus, Benson had a greater need to ensure his own protection than did the officer in *Carmouche* because his attention would be diverted while he searched the car. Under these circumstances, the trial court did not err in finding that Benson engaged in a reasonable pat-down search.

 Farmer further contends Benson exceeded the scope of a lawful protective search. Benson testified that as he patted Farmer down around his front waistline, he felt a large object. He testified he did not know whether the object was a weapon. He also testified that for his protection, he put Farmer in handcuffs before opening his pants.

 If a protective search goes beyond what is necessary to determine whether the suspect is armed, it is no longer valid under *Terry. Dickerson,* 508 U.S. at 373, 113 S.Ct. 2130; *Carmouche,* 10 S.W.3d at 330. In *McAllister v. State,* 34 S.W.3d 346, 351–52 (Tex.App.—Texarkana 2000, pet. ref'd), a pat-down of the defendant's pants pocket revealed an object that the officer testified might have felt like a weapon, but that turned out to be a crack pipe. This court held that once the officer's pat-down search revealed an object the officer reasonably believed might be a weapon, the officer could reach into the defendant's pocket to determine if the object was actually a weapon. *Id.* at 353.

*McAllister* presents an analogous situation to the present case. Once Benson's protective search revealed an item he reasonably believed might be a weapon, he was justified in making a more intrusive search for his own protection. Thus, the

trial court did not err in failing to suppress the cocaine.

The judgment is affirmed.