**Affirmed and Memorandum Opinion filed June 21, 2012.**



In The

# Fourteenth Court of Appeals

_____

NO. 14-11-00381-CR
_____

**JAMICHAEL DEMON HENRY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 1269585**

## MEMORANDUM OPINION

Appellant JaMichael Demon Henry appeals his conviction for possession of a controlled substance with intent to deliver. In a single issue appellant challenges the trial court's denial of his motion to suppress evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the felony offense of possession of a controlled substance with intent to deliver. The charge was enhanced by two prior felony convictions. Appellant pleaded "not guilty" to the charged offense.

Appellant filed a motion to suppress all evidence, including 34.1 grams of crack cocaine found in his pants following a traffic stop and search. At the hearing on appellant's motion, several officers testified to being part of a tactical unit conducting a narcotics investigation. As part of the investigation, an undercover narcotics officer, Officer Zapata, was conducting surveillance in an apartment complex and had received information from another undercover officer that a black male in a silver Dodge Stratus automobile was possibly trafficking crack cocaine in the area. Officer Zapata, in an unmarked patrol unit, spotted the vehicle, followed it, and observed that rather than coming to a complete stop, the driver rolled through a stop sign at the intersection of O'Meara and Main. Officer Zapata then instructed two other officers in a marked patrol unit to initiate a traffic stop of the vehicle for the traffic law infraction.

Officer Zapata continued to follow the vehicle. The driver did not stop immediately when the marked patrol unit activated emergency lights to initiate the traffic stop but continued for over a mile. For this reason, Officer Zapata drove his unmarked vehicle beside the target vehicle to see, for the officers' safety, what was happening inside the vehicle. He observed the male passenger leaning back in the seat, making furtive gestures, moving around the vehicle, and "stuffing" an item in the waistband of his pants in an attempt to conceal something. Believing that the male passenger was armed with a weapon, Officer Zapata reported his observations to the officers in the marked patrol unit.

Officer Smith testified that he and another officer were driving in a marked patrol unit and received the information from Officer Zapata that the driver of the vehicle had committed a traffic violation by running the stop sign. These two officers initiated a

2

traffic stop to investigate the traffic offense. With the knowledge that the male passenger was making furtive movements in the vehicle before the stop and possibly had been involved in trafficking narcotics, all of the officers believed that appellant could have been hiding a weapon in his pants given their past experience that weapons are often involved in narcotics transactions. On this basis, Officer Smith conducted a "high risk" stop, in which the officers are to use caution in approaching the vehicle.

Once the vehicle stopped, one officer approached the driver's side, and Officer Smith approached the passenger side of the vehicle, where appellant was seated. After appellant exited the vehicle, the officer conducted a pat-down in search for weapons and felt an object in the groin area of appellant's pants. According to the officer, he felt the bulge, knew it was not normal or common, and believed it to be a weapon. Citing concerns for the officers' safety, Officer Smith placed appellant in handcuffs and continued the pat-down for weapons. This time the officer felt plastic inside appellant's pants and felt a crumbling substance inside the plastic; the officer, upon hearing the sound of the substance crumbling, believed, based on his experience, that the substance was crack cocaine. The zipper on appellant's pants was partially pulled down before the pat-down began. The officer pulled the partially unzipped zipper down a little more and pulled the plastic bag through the opened zipper; the plastic bag contained "cookies" of crack cocaine. Appellant was arrested.

The driver of the vehicle, appellant's girlfriend, testified at the suppression hearing. According to the driver, she picked appellant up at a motel and then stopped at an apartment complex, where appellant exited the vehicle and returned five minutes later. She testified that she made a complete stop at the stop sign at the intersection of O'Meara and Main. She testified that the officers took her from the vehicle at gunpoint and did not tell her the reason for the stop; eventually, an officer told her they were conducting a traffic stop. No traffic citation was issued to the driver during the traffic stop. The driver testified that appellant wore "warm-up" pants that had no zipper.

3

The trial court denied appellant's motion to suppress. Following a trial, the jury found appellant guilty of the charged offense. Appellant pleaded "true" to the enhancement allegations and was sentenced to thirty-two years' confinement.

## ISSUE AND ANALYSIS

In a single issue, appellant asserts the trial court erred in denying the motion to suppress because the evidence was obtained in violation of the Fourth Amendment of the United States Constitution. Appellant asserts that officers initiated the traffic stop and subsequent search based on information gathered from a confidential informant. Appellant likens the flow of information from the informant to the arresting officer to the childhood game of "telephone" such that the information learned by the arresting officer was not true and had changed as a result of being passed through several other people.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). At a suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Weide v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor, but we review de novo the trial court's application of the law to the facts as resolution of those ultimate questions does not turn on the evaluation of credibility and demeanor. *See Guzman*, 955 S.W.2d at 89. When, as in this case, there are no written findings of fact in the record, we uphold the ruling on any theory of law applicable to the case and presume the trial court made implicit findings of fact in support of its ruling so long as those findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). We view a trial court's ruling on a motion to suppress in the light most favorable to the trial court's decision. *Weide*, 214 S.W.3d at 24. If supported by the record, a trial court's ruling on a motion to suppress will not be overturned. *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

4

To establish grounds for suppression of evidence for alleged violations under the Fourth Amendment, a defendant bears the initial burden to produce evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This burden may be satisfied upon a showing that a search or seizure occurred without a warrant. *Id.* The burden then shifts to the State to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* In the case under review it is undisputed that the officers did not have a warrant; therefore, the State bore the burden of establishing the reasonableness of the warrantless detention. *See id.*

Appellant claims the officers had no specific, articulable facts to believe he was engaged in criminal activity. An officer may stop and detain a person if the officer has reasonable suspicion that a traffic violation was in progress or had been committed. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *Kelly v. State*, 331 S.W.3d 541, 549 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Reasonable suspicion exists if the officer has articulable facts that, when combined with other rational inferences taken from those facts and the officer's training, would lead the officer to believe that the person in the vehicle was engaging in, has been, or is about to engage in criminal activity. *Ford*, 158 S.W.3d at 492. Reasonable suspicion is based on an objective standard that disregards the subjective intent of the officer and looks entirely at whether an objective basis for the detention exists. *Garcia*, 827 S.W.2d at 530. We consider the totality of the circumstances when determining whether reasonable suspicion exists. *Ford*, 158 S.W.3d at 492–93.

Under the Texas Transportation Code, a driver is required to stop at a stop sign in the following manner: (1) if no crosswalk exists, the driver shall stop before entering the crosswalk at a clearly marked stop line; (2) if no stop sign exists, the driver shall stop at a clearly marked stop line; and (3) if no stop line exists, the driver shall stop "at the place nearest the intersecting roadway where the operator has a view of the approaching traffic on the intersecting roadway." *See* Tex. Transp. Code Ann. § 544.010(c) (West 2011).

5

The record reflects Officer Zapata's testimony that he observed the driver of the vehicle commit a traffic violation by rolling through a stop sign at the intersection of O'Meara and Main. Although appellant refers to testimony from the driver of the vehicle that she came to a complete stop at the stop sign, as sole judge of the witnesses' credibility at the suppression hearing, the trial court could have decided to believe Officer Zapata's testimony and disbelieve the driver's testimony. *See Weide*, 214 S.W.3d at 24.

Officer Zapata relayed his observations to the two officers in the marked patrol unit, who then effectuated the stop of the vehicle. Reasonable suspicion can be based on information relayed to one officer by other officers and the sum of the information known to those officers cooperating with him. *See Mount v.* State, 217 S.W.3d 716, 728 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The trial court was free to consider the officers' failure to issue a traffic citation to the driver in determining the credibility of the witnesses' testimony; but, this evidence does not mean the officers lacked reasonable suspicion as a matter of law. *See Overshown v. State*, 329 S.W.3d 201, 205– 06 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The trial court, as the finder of fact, resolved the issue against appellant.

Appellant, referring to the officers' testimony at the suppression hearing that they were conducting a narcotics investigation, asserts that the traffic stop was pretextual. Specifically, appellant asserts that the traffic stop was initiated based on information gleaned from a confidential informant whose credibility and reliability appellant also challenges. The record contains evidence that the traffic stop was related to a traffic violation. An objectively valid traffic stop is not unlawful just because the detaining officer has some ulterior motive for making the stop. *Crittenden v. State*, 899 S.W.2d 668, 674 (Tex. Crim. App. 1995). Considering the totality of the circumstances, the record supports the trial court's implied finding that Officer Smith was justified in stopping the vehicle to investigate the traffic violation. *See Garcia*, 827 S.W.2d at 944; *Kelly*, 331 S.W.3d at 549.

6

Once a suspect has been lawfully detained, an officer may conduct a limited search for weapons, or a "protective frisk," when a frisk is reasonably warranted for the officer's safety and for the safety of others. *See Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002). A pat-down search for weapons or contraband without a warrant is justified only when specific and articulable facts, when taken together with rational inferences from those facts, reasonably could lead to the conclusion that the suspect might possess a weapon. *See Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000). The officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent person justifiably would believe that he or others were in danger. *Balentine*, 71 S.W.3d at 769.

Officer Zapata testified that he saw appellant making furtive movements inside the vehicle as if to conceal items in the waistband of his pants. Armed with the knowledge that appellant possibly was involved in trafficking narcotics and that weapons are often associated with narcotics transactions, and based on appellant's furtive movements within the vehicle before the vehicle stopped, the officers believed appellant was armed, warranting a "high risk" stop of the vehicle. The officers all testified that they were concerned for their safety when they developed the belief that appellant was armed. The record supports the trial court's implied finding that a reasonably prudent person in the officer's position would believe that he or others might be in danger and was justified in conducting a pat down and restraint of appellant. *See Balentine*, 71 S.W.3d at 769; *Carmouche*, 10 S.W.3d at 330 (noting that weapons and violence are associated with narcotics transactions).

During the pat-down, when Officer Smith felt an unusual bulge in appellant's groin area, the officer placed appellant in handcuffs to ensure the officers' continued safety. An officer may handcuff an individual being detained when there is a reasonable belief that such restraint is necessary for protection. *See Mays v. State*, 726 S.W.2d 937, 943–44 (Tex. Crim. App. 1986) (involving an officer who handcuffed two men during a

7

frisk for the officer's protection); *Farmer v. State*, 47 S.W.3d 187, 190, 193 (Tex. App.—Texarkana 2001, pet. ref'd) (providing that an officer was justified in conducting a protective search for weapons following a valid traffic stop and in handcuffing the accused during the pat-down for officer safety before ultimately finding contraband in the waistband of the accused's pants). Appellant complains that Officer Smith exceeded the scope of a reasonable search. If a protective search goes beyond what is necessary to determine whether the person is armed, it is no longer valid. *See Carmouche*, 10 S.W.3d at 330. Once Officer Smith's initial pat-down revealed an object that the officer reasonably believed was a weapon, the officer was justified in making a more intrusive search for his own protection. *See Farmer*, 47 S.W.3d at 193. According to Officer Smith, after placing appellant in handcuffs and then continuing the search again, he felt plastic inside appellant's pants and felt and heard a crumbling substance inside the plastic bag, leading the officer to form an immediate belief that the substance was crack cocaine.

An officer may lawfully seize contraband discovered during a protective frisk if its "contour or mass makes its identity immediately apparent" and the incriminating nature of the item is apparent. *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130 124 L. Ed. 2d 334 (1993); *see Baldwin v. State*, 278 S.W.3d 367, 371–72 (Tex. Crim. App. 2009) (describing "plain feel" doctrine created in *Dickerson*); *McAllister v. State¸* 34 S.W.3d 346, 352 (Tex. App.—Texarkana 2000, pet. ref'd). When an officer is able to ascertain the nature of an object through the sense of touch with sufficient reliability to support a seizure, the seizure is reasonable and does not violate the Fourth Amendment. *Dickerson*, 508 U.S. at 376, 113 S. Ct. 2130. As reflected in the record, the nature of the contraband within appellant's pants was so immediately apparent to Officer Smith that he was able to determine from the sound and feel that the substance was crack cocaine before removing it from appellant's pants. *See Griffin v. State*, 215 S.W.3d 403, 410 (Tex. Crim. App. 2006). Under the circumstances, the officer was justified in retrieving the plastic bag containing crack cocaine from appellant's partially unzipped pants. *See id.* (providing that officer was justified in removing tubes used for narcotics consumption

from a suspect's pocket during a protective search for weapons); *Farmer*, 47 S.W.3d at 193 (providing that because the officer reasonably believed that the large object he felt was a weapon, the officer was justified in opening the front of the person's pants during a protective pat-down for weapons); *McAllister*, 34 S.W.3d at 353 (providing that narcotics found in an accused's pocket during a protective frisk did not exceed the search and the officer's actions were justified by the extension of the pat-down search resulting in the discovery of the narcotics). Thus, the record supports the trial court's implicit finding that the seizure of the contraband was pursuant to the "plain feel" doctrine" and that the totality of the circumstances justified the extended pat-down search. *See Griffin*, 215 S.W.3d at 410 (Tex. Crim. App. 2006); *Farmer*, 47 S.W.3d at 193; *McAllister*, 34 S.W.3d at 353. The trial court did not abuse it discretion in denying appellant's motion to suppress. Accordingly, we overrule appellant's sole issue.

The trial court's judgment is affirmed.

/s/                Kem Thompson Frost
                              Justice

Panel consists of Justices Frost, Brown, and Christopher.

Do Not Publish — TEX. R. APP. P. 47.2(b).

9