

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00110-CR
### NO. 02-12-00111-CR

STEVEN RAY DOTSON                                             APPELLANT

V.

THE STATE OF TEXAS                                                 STATE

----------

## FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Steven Ray Dotson appeals his convictions for possession of a controlled substance with intent to deliver. In three points, he claims the trial court abused its discretion by denying his pretrial motion to suppress. We affirm.

----

[1]See Tex. R. App. P. 47.4.

## Background

In 2010, the City of Hurst formed the Hurst Intervention Team (HIT), a multi-agency task force composed of police officers, firefighters, code enforcement officers, building inspectors, mental health workers (MHMR), child protective services personnel (CPS), animal control officers, and officials from other agencies as needed. HIT member Debbie Branham, a code enforcement officer for the city, testified at the hearing on Appellant's motion to suppress that Appellant's house was considered a nuisance in the neighborhood and had for several years been the subject of numerous complaints about trash, debris, high grass, and weeds.

Appellant and his father allowed HIT inside the house during a visit in September 2010. The team found the conditions inside unsanitary—exposed food, cobwebs, roaches, feces on the floor and in the bathroom—and hazardous—trash and dirt piled next to a heater and extension cords running throughout the rooms. Branham advised Appellant that HIT would allow him some time to clean the place up. After a couple of months, the team returned to find that the conditions outside the house had been improved; however, no one was allowed entry inside the house to assess conditions there on any subsequent visit.

In response to persistent complaints from neighbors, Branham secured an administrative search warrant, which authorized a follow-up investigation of the

2

inside of Appellant's house to determine whether health and safety code violations continued.

HIT executed the warrant on March 15, 2011. Police Officer Briane Dibley and another officer accompanied Branham, along with MHMR personnel and an animal control officer. The police functioned primarily to secure the house and ensure its safety for the inspection. Upon entering the house, the team found the conditions "substandard," meaning unlivable for a human being under the city's property maintenance code.

Appellant's mother, Betty Dotson, answered the door when HIT executed the warrant. Branham asked for Appellant, who was the owner of the house. Appellant came to the door and sat down. The police officers searched the house for others and brought all occupants to the living room. Branham was not present while the officers talked to the occupants; she was checking all the rooms for code violations and unsanitary conditions. Nor was she there to confiscate or seize any property. When officers learned that Appellant had a warrant out for his arrest, they arrested him and took him to the city jail.

Hurst Police Officer Jonas Ceja, a member of the Tarrant County Narcotics Task Force, testified that Officer Dibley called him from the jail about some drugs that had been seized from a house in Hurst. Officer Ceja met with Officer Dibley at the police station, where she briefed him that, while assisting the code-enforcement unit at Appellant's house, she arrested Appellant on an outstanding traffic warrant, and that Appellant had requested that his medications accompany

him to the jail. She further advised that she gathered the medications and transported them to the jail, where during their inventory she noticed that the pills did not match the prescription labels on the bottles.

Officer Ceja testified that he took custody of the pills and that he interviewed Appellant about the drugs.

Branham testified that she did not hear Appellant ask for his pills because she had been checking for code violations in another room. Officer Ceja testified that the arresting officer, Dibley, told him that Appellant had asked her to take his prescribed medications to the jail. Ashley Dotson, one of the occupants of the house, testified for Appellant that she did not hear Appellant ask for his pills.

The trial court denied Appellant's motion to suppress. A jury found him guilty, assessed his punishment at twenty-six years' confinement, and the trial court sentenced him accordingly.

**Issues on Appeal**

Appellant combines his three points into a single argument challenging the propriety of the trial court's denying his motion to suppress because the pills seized from his bedroom and his incriminating statements were inadmissible fruits of an unlawful search and seizure.

**Standard of Review**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

4

In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). At a suppression hearing the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). When application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53. When reviewing the trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

**Analysis**

Citing *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 416 (1963), Appellant contends that HIT exceeded the scope and authority of the administrative search warrant by conducting an exploratory search of his house and thereby unlawfully seized his medications.[2] The State responds that the search for and seizure of Appellant's medications in his bedroom was consensual because Appellant asked the officer to go into his bedroom and retrieve them. We agree.

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. After a defendant has made this showing, the burden of proof shifts to the State, which then must establish that the search or seizure was authorized by a warrant or was

---

[2]Appellant claims in his brief that the evidence used to support the validity of the administrative search warrant was "stale." But because Appellant did not raise this issue in the trial court, it will not be heard now for the first time on appeal. *See* Tex. R. App. P. 33.1(a).

6

reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *see Best*, 118 S.W.3d at 862. One well-established exception is a search conducted pursuant to consent. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973)). Voluntary consent to a warrantless search violates neither the United States or Texas constitutions nor the laws of Texas. *Brimage v. State*, 918 S.W.2d 466, 480 (Tex. Crim. App. 1994) (citing *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988 (1974)), *cert. denied*, 519 U.S. 838 (1996); *Spight v. State*, 76 S.W.3d 761, 768 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803–04 (1991). A court reviewing the totality of circumstances of a particular police-citizen interaction does so without regard for the subjective thoughts of the officer or the citizen. *Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S. Ct. 2778, 2783 (1985); *Meekins*, 340 S.W.3d at 459. In Texas, the "clear and convincing"

7

burden requires the prosecution to show that the consent given was positive and unequivocal and that there must not have been duress or coercion, express or implied. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985); *see* Tex. Const. art. 1, § 9. If the record supports a finding by clear and convincing evidence that the consent given was free and voluntary, this court may not disturb the trial court's finding. *Ramos v. State*, 124 S.W.3d 326, 332 (Tex. App.—Fort Worth, 2003, pet. ref'd); *State v. Hunter*, 102 S.W.3d 306, 309 (Tex. App.—Fort Worth 2003, no pet.) (citing *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000)); *Spight*, 76 S.W.3d at 768.

Appellant argues that probable cause for the administrative warrant only allowed a search based on the unkempt condition of the exterior of the house for health and safety purposes and that, once the officers were inside the house as authorized by the warrant, they overreached and went beyond its scope in seizing Appellant's medications. But the issue as developed at the hearing on the motion to suppress and at trial was whether Appellant consented to the seizure of his medications by requesting Officer Dibley to obtain his medications for him, not whether the officers seized Appellant's medications in the course of an unlawful search.

The record as it existed at the time of the suppression hearing contains conflicting testimony with regard to whether Appellant consented. It shows that Branham did not hear Appellant ask for his medications because she was in another room inspecting the house for code violations; that Officer Dibley told

8

Officer Ceja that Appellant asked her to obtain his pills from his bedroom and bring them to the jail before they left the house; and that Ashley Dotson, Appellant's niece, who also testified, did not remember whether Appellant asked for his medications.

Appellant contends that Officer Dibley's account of how she obtained the medications was refuted by two other police officers (Keenan and Ceja) the code compliance officer (Branham), as well as one of the occupants of the home (Ashley Dotson). We do not agree with this interpretation of the record of the suppression hearing. Branham and Officer Ceja testified that they were not in the room when any request was made. Officer Ceja was never at the house, and Branham was inspecting other rooms. Ashley Dotson testified that, although she was in the living room, she did not hear Appellant make a request for his medications. Officer Keenan testified that she participated in the protective sweep while the warrant was executed, served primarily a security function, and did not hear Appellant ask Officer Dibley to fetch his medications.

The trial court was entitled to rely upon Officer Ceja's account of what Officer Dibley told him, to disbelieve Ashley Dotson, and to believe that Keenan was occupied with other matters when Appellant asked for his medications. *See Granados v. State*, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002) (holding rules of evidence, with the exception of privileges, do not apply in suppression hearings), *cert. denied*, 538 U.S. 927 (2003); *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000) (holding judge may believe or disbelieve all or any part of a

9

witness's testimony).  As the State points out in its brief, Ashley Dotson was on probation and could lose custody of her child if she were found in a house where drugs were being illegally sold.

Moreover, Officer Dibley confirmed by her testimony at trial that Appellant requested her to retrieve his medications from his bedroom when he was arrested and to bring them to the jail because he needed to take them.[3]  The trial court was entitled to conclude that Appellant's request that Officer Dibley obtain his medications from his bedroom and bring them to the jail constituted express consent for her to enter his bedroom and retrieve the pouch of pills at issue. Given the absence of evidence that anyone explicitly or implicitly coerced or threatened Appellant, the trial court was entitled to find that Appellant's request for Officer Dibley to get his medications amounted to voluntary consent.  *See Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000).

Because consent is a question of fact in this case that turned on the credibility and demeanor of the witnesses, we give almost total deference to the trial court's judgment in weighing and determining the conflicting evidence. *Amador*, 221 S.W.3d at 673.  Here, after hearing all of the witnesses' testimony

_____

[3]Generally, in determining whether the State demonstrated probable cause and exigent circumstances, appellate review is limited to the record at the time of the suppression hearing.  *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000).  However, appellate review may include evidence adduced at trial when, as here, "the suppression issue has been consensually re-litigated by the parties during trial on the merits." *Turrubiate v. State*, 399 S.W.3d 147, 150–51 (Tex. Crim. App. 2013) (quoting *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App.1996), *cert. denied*, 519 U.S. 1043 (1996)).

10

and after weighing all of the evidence, the trial court denied Appellant's motion to suppress. Viewing the evidence in the light most favorable to the trial court's ruling, we hold that the trial court did not abuse its discretion in concluding that Appellant consented to the search and seizure of his pills. By requesting that Officer Dibley retrieve his medications from his bedroom, Appellant expressly gave consent for her to do so. *See Rose v. State*, 308 S.W.2d 52, 53 (Tex. Crim. App. 1957) (holding seizure of marihuana from suitcase valid when suitcase was unknown to officers and defendant informed officers where it could be found and invited officer to enter house to get it). By retrieving only Appellant's pouch containing the medications from his bedroom, the officer did not exceed the scope of Appellant's consent. *See Jimeno*, 500 U.S. at 251, 111 S. Ct. at 1804; *McAllister v. State*, 34 S.W.3d 346, 351 (Tex. Crim. App. 2000).

Appellant's contention that his incriminating statements made to Officer Ceja should have been suppressed is not that he did not receive and waive proper warnings but that his incriminating statements directly flowed from the earlier illegality of the search and seizure of the drugs from his bedroom that exceeded the scope of the administrative warrant, and that his statements were thus likewise tainted. Appellant urges that there was no showing that the taint was removed by any later actions of the police and, therefore, that his statements should not have been admissible against him at trial. He reasons that but for the earlier actions of the police in taking him into custody and seizing his medications, he would not have been in a position to be questioned by the police

so as to make the incriminating responses used against him at trial.  Because we have held that the trial court did not abuse its discretion in concluding that Appellant consented to the search and seizure of his pills, it follows that his statements to Officer Ceja were not tainted by any improper seizure of the medications.  We overrule Appellant's three points.

## Conclusion

Having overruled all of Appellant's points, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 12, 2014