No. 04-01-00303-CR



Tracy Lynn STURCHIO,


Appellant



v.



The STATE of Texas,


Appellee



From the 290th Judicial District Court, Bexar County, Texas


Trial Court No. 2001-CR-1010


Honorable Sharon MacRae, Judge Presiding



Opinion by: Sarah B. Duncan, Justice


Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Sarah B. Duncan, Justice

 

Delivered and Filed: September 11, 2002


REVERSED AND REMANDED

 Tracy Lynn Sturchio pled no contest to the felony offense of possession of a controlled
substance (cocaine) weighing less than one gram and was sentenced to three years imprisonment in
the Texas Department of Criminal Justice. In her sole point of error, Sturchio challenges the trial
court's denial of her motion to suppress. Because the trial court erred in denying Sturchio's motion,
we reverse the judgment and remand the case for further proceedings. 

Standard of Review

 We review the trial court's denial of a motion to suppress under an abuse of discretion
standard. See Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). Under this standard, the
trial court's findings of fact are given "almost total deference." Carmouche v. State, 10 S.W.3d 323,
327-28 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
However, when the resolution of the ultimate issue does not turn upon an evaluation of credibility
or demeanor, we review the trial court's determination of the applicable law, as well as its application
of the appropriate law to the facts it has found, de novo. Id.

Factual and Procedural Background

 On October 3, 2000 around 7:30 p.m., San Antonio police officer Thelma Self observed
vehicles approach Sturchio as she walked up and down the street carrying an empty gasoline
container in an area known for drugs and prostitution. Believing that Sturchio was engaged in
prostitution, Self and her partner approached Sturchio and asked for identification. While Self's
partner was checking for warrants, Self frisked Sturchio for weapons. During the pat down, Self
found a crack pipe inside the zipper area of Sturchio's shorts and arrested her for possession of drug
paraphernalia. Self then proceeded to search Sturchio again and found crack cocaine hidden in
Sturchio's bra. Sturchio was charged with the offense of possession of a controlled substance and
indicted as a repeat offender. Sturchio filed a motion to suppress evidence, which the trial court
denied after a hearing. Pursuant to a plea bargain, Sturchio then entered a plea of no contest to the
charge and a plea of true to the enhancement paragraph. The trial court found Sturchio guilty of the
offense and found the enhancement paragraph to be true and sentenced her to three years confinement
in the Texas Department of Criminal Justice-Institutional Division. Sturchio now appeals the
judgment, complaining that the trial court erred in denying her motion to suppress.

Discussion

 Sturchio argues that she was detained, arrested, and searched in violation of the Fourth
Amendment of the United States Constitution, article I, section 9 of the Texas Constitution, and
article 14.01 of the Texas Code of Criminal Procedure. As a preliminary matter, the State contends:
(1) Sturchio waived her article 14.01 complaint by failing to assert it to the trial court, and (2)
because Sturchio's sole point of error is multifarious, we should not address it.

 Citing Heitman v. State, the State urges us to reject Sturchio's point of error entirely as
multifarious, because she failed to distinguish and provide separate authority for her state and federal
constitutional claims. See Heitman v. State, 815 S.W.2d 681, 690 n.23 (Tex. Crim. App. 1991) (citing
McCambridge v. State, 712 S.W.2d 499, 501-502 n.9 (Tex. Crim. App. 1986). Although Sturchio's
point of error is multifarious, we will address each properly raised contention necessary for the
disposition of the issue. See Tex. R. App. P. 38.1(e). However, because Sturchio does not contend
that article I, section 9 provides different protections than the Fourth Amendment, we will make no
distinction. See Carmouche, 10 S.W.3d at 326 n.1.


 Temporary Investigative Detention


 Sturchio first argues the State failed to produce credible evidence at the motion to suppress
hearing to show she was engaging in or about to engage in illegal activity, and that her conduct in
walking up and down the street carrying an empty gasoline container was purely innocent and
insufficient to warrant an investigatory stop. We disagree. 

 The relevant inquiry is not whether the particular conduct is innocent or criminal but "the
degree of suspicion that attaches to particular types of noncriminal acts." Woods v. State, 956 S.W.2d
33, 38 (Tex. Crim. App. 1997). In evaluating the validity of a temporary investigative detention, we
consider the totality of the circumstances at the time of the detention. Terry v. Ohio, 392 U.S. 1, 19
(1968). An investigative detention is justified when an officer has "specific articulable facts which,
in light of his experience and general knowledge taken, together with rational inferences from those
facts, would reasonably warrant the intrusion on the citizen." Gurrola v. State, 877 S.W.2d 300, 302
(Tex. Crim. App. 1994). If the officer has a reasonable suspicion "that some activity out of the
ordinary is occurring or had occurred, some suggestion to connect the detained person with the
unusual activity, and some indication that the activity is related to a crime," then the temporary
seizure may be found to be reasonable and justified. Johnson v. State, 658 S.W.2d 623, 626 (Tex.
Crim. App. 1983), overruled on other grounds, Woods, 956 S.W.2d at 36, n.3, 39.

 At the suppression hearing, Officer Self testified she had fifteen years of experience as a police
officer and had been assigned to a special unit created to target prostitution and drug trafficking in
an area known for such activity. On the date in question, Self, who had previously seen Sturchio on
the street with other known prostitutes, observed Sturchio dressed in shorts and a small top as she
walked up and down the street carrying an empty gas container and approached vehicles along with
the other women. From this, Self determined that Sturchio and the other women were actively
engaging in prostitution or "soliciting ... sexual favors for money." And although Self had seen
Sturchio with an empty gasoline container at one point, she believed, based on her other observations,
the gasoline container was merely a cover. Therefore, Self asked Sturchio for identification and
detained her to investigate for possible solicitation and check for outstanding warrants. Based on the
totality of the circumstances surrounding Sturchio's detention, including Self's experience as a police
officer, the area in which Sturchio was detained, and Self's observations, we hold that reasonable
suspicion existed for Self to believe Sturchio was involved in the criminal activity of prostitution. See
Tex. Pen. Code Ann. § 43.02 (Vernon 2001). Thus, the initial detention was justified.


 Pat Down Search for Weapons


 Sturchio next argues the pat down search, in which the officer found a crack pipe, was
unwarranted because she posed no threat or harm to the officer. We disagree.

 "A pat-down search is substantially less intrusive than a standard search requiring probable
cause." O'Hara v. State, 27 S.W.3d 548, 550 (Tex. Crim. App. 2000). While the officer conducting
a weapons search must justify his decision to search with specific articulable facts, the officer need
not be absolutely certain a person is armed. Terry, 392 U.S. at 27. However, the officer must have
reasonably believed "his safety or that of others was in danger." O'Hara v. State, 27 S.W.3d at 551.
To determine "whether the officer acted reasonably in such circumstances, due weight must be given
... to the specific reasonable inferences which he is entitled to draw from the facts in light of his
experience." Terry, 392 U.S. at 27.

 Self testified she patted down Sturchio while her partner checked for warrants, because she
knew from experience prostitutes frequently carried small weapons such as scissors, knives, fingernail
files, and other sharp objects. Based on this testimony, it was not unreasonable for Self to believe
Sturchio might be carrying a similar weapon that could endanger her safety or the safety of her
partner. See Carmouche, 10 S.W.3d at 330 ("a police officer's reasonable belief that a suspect is
armed and dangerous may be predicated on the nature of the suspected criminal activity.").
Accordingly, Self was justified in patting down Sturchio for weapons.


 Legality of Warrantless Arrest and Subsequent Search


 Sturchio contends her warrantless arrest and the subsequent search that led to the discovery
of the crack cocaine were illegal, because no exception to the warrant requirement existed. In
response, the State relies on the "plain feel" exception first articulated by the Supreme Court in
Minnesota v. Dickerson, 508 U.S. 366 (1993). We hold the officer's seizure of the crack pipe did not
fall within the "plain feel" exception.

 In Minnesota v. Dickerson, the Court expanded the permissible bounds of a Terry search to
include the discovery of contraband that the officer inadvertently, but "immediately," detects through
the sense of touch. Id. at 375-76. Specifically, the Court stated: 

If a police officer lawfully pats down a suspect's outer clothing and feels an object
whose contour or mass makes its identity immediately apparent there has been no
invasion of the suspect's privacy beyond that already authorized by the officer's
search for weapons; if the object is contraband, its warrantless seizure would be
justified by the same practical considerations that inhere in the plain-view context.


Id. Thus, a search passes constitutional muster under Dickerson if there is some evidence upon which
to conclude that the incriminating nature of the contraband was "immediately apparent" to the
searching officer. Id. This test is not met here.


 Self testified as follows regarding the crack pipe:

State: Okay, [a]nd that pat down resulted in finding narcotic paraphernalia?

Self: The narcotic paraphernalia was a crack pipe.

State: What did you do at that point?

Self: I placed her under arrest and I began to search her, and I found the crack
cocaine in her bra.

...

Defense: Now, isn't it true that you searched her, you patted her down for weapons
and you found nothing and then you searched her again and [that is when] you
found the crack pipe down her pants?


Self: No. When I grabbed her from the pants, she had that pipe right in her -
concealing it in her zipper area.

...

Defense: Well, isn't it true that you actually searched her three times? You searched her
once after you asked for her ID and found nothing. Then you searched her
and patted her down again and I don't know, did you stick your hands down
her pants to find the crack pipe?


Self: No. I didn't stick my hands down her pants. I patted her pants down, and
when I felt something there I pulled it out.


This testimony constitutes no evidence upon which the trial court could have concluded or inferred
that Self, upon feeling the crack pipe, immediately recognized it to be illegal contraband before
removing it from Sturchio's shorts. Thus, Self's seizure of the crack pipe does not fall within
Dickerson's "plain feel" exception to the Fourth Amendment's warrant requirement. The seizure was
therefore illegal under the Fourth Amendment and corresponding Texas constitutional provisions.
Because the warrantless arrest and search incident to arrest that led to the discovery of the cocaine
were based on the illegal seizure of the crack pipe, they were illegal as well. Consequently, the
evidence obtained as a result of the pat down, warrantless arrest, and search incident to arrest should
have been suppressed. Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp. 2001). We
therefore hold that the trial court erred in denying Sturchio's motion to suppress evidence of the
crack pipe and cocaine. Sturchio's point of error is sustained.

Conclusion

 Because the State failed to demonstrate that the incriminating nature of the crack pipe was
immediately apparent to the searching officer, we have no alternative but to reverse the trial court's
order denying Sturchio's motion to suppress, reverse the judgment, and remand the case for further
proceedings. See Russell v. State, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986) ("Once a defendant has
established 1) that a search or seizure occurred and 2) that no warrant was obtained, the burden of
proof shifts to the State ... [to] prove the reasonableness of the search or seizure" pursuant to one
of the recognized exceptions to the warrant requirement.). Having disposed of the case on
constitutional grounds, we need not address Sturchio's article 14.01 complaint or the State's
contention that it was waived. 

 Sarah B. Duncan, Justice

Publish