Affirmed and Majority and Concurring
Opinions filed May 6, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00353-CR


NO. 14-09-00354-CR

NO. 14-09-00355-CR



 

The State of
Texas, Appellant 

v.

Lavetta Renee
Williams, Appellee 



On Appeal from
the County Court at Law No. 4

Brazoria County, Texas

Trial Court
Cause Nos. 168582, 168583, 168584



 

MAJORITY OPINION 

Lavetta Renee Williams was arrested on three counts
of possession of a controlled substance, penalty group three less than twenty-eight
grams.  The arrest occurred after police discovered she was concealing
prescription drugs in her bra.  She filed a motion to suppress the evidence obtained
in the search.  After reviewing all the evidence during the hearing on the
motion to suppress, the trial court granted Williams’s motion.  We affirm.

I

            At about 4:30 a.m.
on July 29, 2008, Angleton police officer Tony Duncan pulled over a vehicle
with a defective tail lamp.  Four people were in the vehicle including Lavetta
Renee Williams, who was seated in the rear seat behind the passenger.  Officer
Duncan testified that he had pulled over the same vehicle earlier that night in
the same part of town.  He stated that only Joseph Newman, the driver, was in
the vehicle at the time of the first incident.  During the first incident,
Officer Duncan noticed a bottle of pills in the center console of the vehicle,
but he let Newman “go with a warning.”  

When Officer Duncan pulled over the vehicle the
second time, he noted that the bottle of pills was missing.  Officer Duncan
also testified that when Newman pulled over, the front-seat passenger exited
the vehicle and ran into a nearby convenience store.  Officer Duncan arrested
Newman for possession of a controlled substance after he discovered numerous
prescription pills in his pocket during a pat-down search.  

Officer Duncan testified that after he made the
arrest, Newman told him that Williams had a steak knife, and she was threatening
to stab the other passengers.  During Newman’s arrest, Williams had stayed
seated in the back seat of the vehicle, she did not make any sudden movements
or gestures, and she never attempted to escape.  Officer Duncan testified that
he was familiar with Williams because she had been the subject of several
narcotics complaints and had a reputation for having a violent temper.  

After all the occupants were out of the vehicle, at
least two other officers, including one female officer, arrived on the scene to
assist Officer Duncan.  Officer Duncan testified that he did not want to
conduct a pat-down of Williams because she was a female.  He stated that he
asked Williams to “kind of reach underneath [her bra] and just pull it out a
little bit and kind of shake it a little bit . . . and maneuver it.”  Because
Williams was relatively well-endowed—“more than average”—Officer Duncan was
concerned she may have concealed the steak knife in her bra.  Williams “refused,
cried, and said she did not want to pull out her bra.”  Officer Duncan again
asked Williams to shake out her bra.  After the second request, Williams
complied and numerous pills fell out of her bra.  Officer Duncan arrested
Williams for possession of a controlled substance.  After she was arrested, the
female officer on the scene conducted a pat-down of Williams.  

Williams filed a motion to suppress the evidence of
drugs in her bra, and after reviewing all the evidence at the hearing on the
motion to suppress, the trial court granted the motion.  The State’s appeal
followed.

II

            The State
contends that the trial court erred in granting Williams’s motion to suppress
the prescription pills that fell out of Williams’s bra after she maneuvered it. 
Specifically, the State argues that the search was reasonable under the
circumstances, Williams consented to the search, and Officer Duncan’s request
was less intrusive than a pat-down.  Williams contends that the search exceeded
the permissible scope of a pat-down, she did not voluntarily consent to the
search, and Officer Duncan’s request was more intrusive than a pat-down.   

                We
generally review a trial court’s decision to grant or deny a motion to suppress
using an abuse-of-discretion standard.  Swain v. State, 181 S.W.3d 359,
365 (Tex. Crim. App. 2005).  During the suppression hearing, the trial court is
the exclusive trier of fact and judge of the witnesses’ credibility.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Mason v. State,
116 S.W.3d 248, 256 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d).  An
appellate court affords almost total deference to the trial court’s
determination of historical facts supported by the record, especially when the
trial court’s findings are based on an evaluation of credibility and demeanor. 
Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002) (citing Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  We afford the same
amount of deference to a trial court’s ruling on “application of law and facts
questions” or “mixed questions of law and fact” if the resolution turns on
evaluating credibility and demeanor.    Johnson, 68 S.W.3d at 652; Guzman,
955 S.W.2d at 89.  We review de novo, however, those questions of mixed law and
fact not turning on credibility or demeanor.   Johnson, 68 S.W.3d at 653
(citing Guzman, 955 S.W.2d at 89).  If the trial court’s ruling is
reasonably supported by the record and is correct on any theory of law
applicable to the case, the reviewing court must sustain it upon review.  Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Flores v. State,
172 S.W.3d 742, 748 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  This is
true even if the trial court states the wrong reason for the correct decision. 
State v. Ross, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). 

A

The
State argues that Officer Duncan did not violate Williams’s Fourth Amendment
rights against unlawful searches and seizures because the officer’s actions
were reasonable under the circumstances.  Officer Duncan testified that he had
a reasonable basis to believe Williams possessed a steak knife, and he was
concerned for his safety.  Based on this information, he requested that
Williams pull her bra away from her body and maneuver it in lieu of conducting
a pat-down.  The State would have this court conclude that based on these facts
Officer Duncan’s actions are permissible under Terry v. Ohio, 392 U.S.
1, 19–20 (1968) and its progeny.  We decline to do so.  

The
Fourth Amendment protects individuals from unlawful searches and seizures.  U.S.
Const. amend. IV.  Both the U.S. Supreme Court and the Court of Criminal
Appeals have held that a traffic stop is considered a Fourth Amendment
seizure.  Berkemer v. McCarty, 468 U.S. 420, 439 (1984); Delaware v.
Prouse, 440 U.S. 648, 653 (1979); see Davis v. State, 947
S.W.2d 240, 243–45 (Tex. Crim. App. 1997).  Because traffic stops are analogous
to investigative detentions, they are analyzed under the two-prong test in Terry. 
Green v. State, 256 S.W.3d 456, 461 (Tex. App.—Waco 2008, no pet.)
(citing Berkemer, 468 U.S. at 439).  During a valid traffic stop, the driver
and all of his passengers are considered seized within the meaning of the
Fourth Amendment.  Brendlin v. California, 551 U.S. 249, 257–58 (2007). 
To be a valid traffic stop, the stop must be reasonable.  Davis, 947
S.W.2d at 244; see U.S. Const. amend. IV. A detention is reasonable if: (1)
the police officer’s actions were justified at the stop’s inception; and (2) the
stop was reasonably related in scope to the circumstances that initially
justified the stop.  Terry, 392 U.S. at 19–20; Kothe v. State,
152 S.W.3d 54, 63 (Tex. Crim. App. 2004).  Once a police officer makes a valid
traffic stop and detains the suspect, the officer may further detain the
suspect if he develops reasonable suspicion that another offense is being
committed.  Goudeau v. State, 209 S.W.3d 713, 719 (Tex. App.—Houston
[14th Dist.] 2006, no pet.); see Davis, 947 S.W.2d at 244.[1]

The
State correctly argues that there may be reasonable circumstances that allow
officers to search a suspect for weapons, but courts have not allowed an overly
broad or unlimited search during a pat-down.  See Balentine v. State,
71 S.W.3d 763, 770 (Tex. Crim. App. 2002).  A valid investigative detention can
give a police officer the ability to pat-down or frisk the suspect for
weapons.  Baldwin v. State, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009). 
Police officers may conduct a limited search for weapons of the suspect’s outer
clothing, even in the absence of probable cause, when an officer reasonably
believes that the suspect is armed and dangerous.  Balentine, 71 S.W.3d
at 769; Carmouche v. State, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000); see
Terry, 392 U.S. at 27.[2]
  Courts have emphasized, however, that the protective search is not related to
seizing evidence or other non-weapon contraband.  Adams v. Williams, 407
U.S. 143, 146 (1972) (“The purpose of this limited search is not to discover
evidence of crime, but to allow the officer to pursue his investigation without
fear of violence . . . .”); Balentine, 71 S.W.3d at 769.  An officer is
allowed to search a suspect for weapons only if he can point to specific and
articulable facts which reasonably led him to conclude that the suspect might
possess a weapon.  Balentine, 71 S.W.3d at 769; Carmouche, 10
S.W.3d at 329.  The officer’s belief that the suspect has a weapon must be
“objectively reasonable in light of the circumstances.”  Carmouche, 10
S.W.3d at 330.  In other words, “[t]he officer need not be absolutely certain
that an individual is armed; the issue is whether a reasonably prudent person
would justifiably believe that he or others were in danger.”  Balentine,
71 S.W.3d at 769.[3] 
Courts have stressed, however, that the permissible scope of a protective
search for weapons is extremely narrow.  Spillman v. State, 824 S.W.2d
806, 809 (Tex. App.—Austin 1992, pet. ref’d) (discussing Supreme Court cases
recognizing a balance between privacy interests of individuals and officer
safety).    

But
courts have allowed officers to conduct more intrusive searches of suspects under
certain situations.  See Adams, 407 U.S. 145, 147–48; Minnesota
v. Dickerson, 508 U.S. 366, 375–76 (1993); George E. Dix & Robert O.
Dawson, Texas Practice: Criminal Practice and Procedure § 11.48 (2d ed.),
11.50 (2d ed. & Supp. 2009-2010).  In Adams v. Williams, a police
officer approached the suspect’s vehicle and saw a gun in the suspect’s
waistband.  407 U.S. at 144–45.  Instead of pulling the suspect out of the
vehicle and conducting a pat-down, the officer reached into the vehicle and
extracted the gun.  Id. at 145.  Although the officer’s actions exceeded
the scope of a pat-down, the Court held the officer’s actions were proper
because of the surrounding circumstances.  Id. at 149.  First, the
officer had received a tip that the suspect was carrying a gun in his
waistband, so there was specific information that the suspect had a weapon and
where it was concealed.  Id. at 146.  Second, the suspect refused to
exit the vehicle.  Id. at 148.  Finally, because the suspect was in a
vehicle in a seated position, an attempt to pat him down would have been
dangerous and difficult.  See id.; Dix & Dawson, § 11.48.  The
combination of the above facts justified why the officer did not need to perform
a traditional pat-down.

            In
Minnesota v. Dickerson, the Supreme Court expanded Terry to allow
officers to permissibly retrieve contraband that they immediately detected during
a pat-down.  508 U.S. at 375–76.  When performing a pat-down, if an officer
“feels an object whose contour or mass makes its identity immediately apparent
there had been no invasion of the suspect’s privacy beyond that already
authorized by the officer’s search for weapons.”  Id. at 375; Carmouche,
10 S.W.3d at 330.  Therefore, the officer’s subsequent seizure of the object is
valid.  Carmouche, 10 S.W.3d at 330.  

As
in Adams, Officer Duncan obtained information that Williams may have a
weapon, and he was understandably concerned for his safety.  But unlike Adams,
Officer Duncan did not refrain from conducting a pat-down because doing so
would have been dangerous or difficult, or because Williams refused to exit the
car, or because he had been told the weapon was hidden in her bra.  Officer
Duncan testified that Williams complied with his request to exit the car, and
that he did not conduct a pat-down on Williams because she was a female.  

Officer
Duncan’s reluctance to perform a pat-down on a female provides insufficient
justification for broadening the scope of the search, especially when a female
officer was on the scene and immediately available to conduct the pat-down in
his place.  Having the female officer perform the pat-down would neither
compromise officer safety nor expose Williams to an overly broad search. 
Besides, we are aware of no authority prohibiting a male officer from patting
down a female suspect, nor has the State pointed to any such authority.  

In
its brief, the State maintains that our decision in Johnson v. State
demonstrates that Officer Duncan’s actions were proper.  See No.
C14-92-00216-CR, 1992 WL 289330, at *1 (Tex. App.—Houston [14th Dist.] Oct. 15,
1992, no pet.) (mem. op., not designated for publication).  In Johnson,
police officers tried to execute a search warrant on a residence and the
appellant fled.  Id.  When the appellant was apprehended, a female
officer asked her to reach under her blouse and shake out her bra.  Id. 
The appellant complied with the request, and drug paraphernalia fell out of her
bra.  Id.  The issue in Johnson, however, was not whether the
request was permissible, but whether the officer had reasonable, articulable
facts that the appellant possessed a weapon.  Id. at *2–3.  Because the
scope of the search was not an issue in Johnson, it is distinguishable
and the State’s reliance on it is misplaced.[4]
              

The
State also compares aspects of Williams’s case to the Court of Criminal Appeals’s
conclusions in State v. Sheppard and Carmouche v. State.  The
State argues that when a weapon may be concealed on the suspect and an officer
is reasonably concerned with his safety, then an officer can conduct a search. 
In both Sheppard and Carmouche, the court decided that an officer
could lawfully search the suspect for weapons.  State v. Sheppard, 271
S.W.3d 281, 288 (Tex. Crim. App. 2008); Carmouche, 10 S.W.3d at 330–31. 
But the facts in Carmouche and Sheppard initially involved a
police pat-down or frisk of the outer clothing of a suspect, not a search of
the suspect’s undergarments.  Sheppard, 271 S.W.3d at 284; Carmouche,
10 S.W.3d at 327.  Only after the initial frisk or pat-down did the court allow
an officer to try to extract a weapon from the suspect.  See Sheppard,
271 S.W.3d at 288, 292; Carmouche, 10 S.W.3d at 330–31.  

Here,
the trial court concluded that Officer Duncan would have been justified in
conducting a pat-down of Williams.  The distinction between Sheppard and
Carmouche and the case at bar is that Officer Duncan did not conduct a Terry
pat-down before employing more intrusive means of searching Williams.  If a
pat-down had been conducted, and if a weapon or other contraband had been
detected as a result, then either Officer Duncan or the female officer could
have attempted to extract the item or could have conducted a more intrusive
search.

Additionally,
although Officer Duncan had been told that Williams had a knife, he was not
told, nor was there any other indication, that Williams had hidden the knife in
her bra.  Furthermore, there is nothing to show that a pat-down would have been
dangerous or ineffective.  Officer Duncan stated that he did not want to pat-down
a female, but the State has not cited any authority to show that he was
therefore justified in conducting a more intrusive search.  And the “more than
average” size of Williams’s bust, as Officer Duncan described it, did not
constitute a reasonable circumstance that would allow officers to conduct an
overly broad search.  See Balentine, 71 S.W.3d at 770.  Because the
State has not presented us with a situation justifying a search exceeding the
scope of a pat-down, we cannot say the trial court abused its discretion in
suppressing the evidence.

B

            The
State asserts that Williams voluntarily consented to Officer Duncan’s request
to maneuver her bra.  Courts have held that consent to search is one of the
specific and “well-established exceptions to the constitutional requirements of
both a warrant and probable cause.”  Carmouche, 10 S.W.3d at 331; see
Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Flores v. State,
172 S.W.3d 742, 749 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  The
consent must be voluntary.  Carmouche, 10 S.W.3d at 331; Flores,
172 S.W.3d at 749.  The validity of consent is a question of fact that is
determined from all of the circumstances.  Ohio v. Robinette, 519 U.S.
33, 40 (1996); Carmouche, 10 S.W.3d at 331.  When an individual gives consent
to search, the consent must “not be coerced, by explicit or implicit means, by implied
threat or covert force.”  Schneckloth, 412 U.S. at 228; see also
Allridge v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991) (“The consent
must be shown to be positive and unequivocal, and there must not be any duress
or coercion.”).  “Although the federal constitution only requires the State to
prove the voluntariness of the consent by a preponderance of the evidence, the
Texas Constitution requires the State to show by clear and convincing evidence
that the consent was freely given.”  Carmouche, 10 S.W.3d at 331; see
Flores, 172 S.W.3d at 749.  

            Courts
consider many factors in deciding if a suspect’s consent was given voluntarily. 
Flores, 172 S.W.3d at 749–50.  These factors include: (1) whether the consenting
person was in custody; (2) whether the suspect was arrested at gunpoint; (3)
whether the suspect had the option of refusing consent; (4) the constitutional
advice given to the suspect; (5) the length of detention; (6) the repetitiveness
of the questioning; and (7) the use of physical punishment.  Id.  We
also consider the suspect’s age, intelligence, and education.   Flores,
172 S.W.3d at 750.  Therefore, the examination of the totality of the
circumstances should include all the circumstances before the search, the
suspect’s reaction to pressure, and any other factor deemed relevant.  Reasor
v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).        

When
a suspect’s consent may be questionable, courts consider the above factors in
deciding if consent was voluntary.  Reasor, 12 S.W.3d at 818–19
(discussing that although the defendant was arrested at gunpoint, his consent
to search his house was voluntary because he had received his statutory
warnings two times, he signed a consent form, and he was repeatedly warned he
had the right to remain silent); Carmouche, 10 S.W.3d at 332–33 (holding
the appellant’s consent was not voluntary because four police officers backed
him up against a car when they asked him to consent, he was never told he had
the right to refuse consent, and officers had already searched the appellant
during a Terry frisk); Flores, 172 S.W.3d at 750–52 (stating the
court decided, after reviewing the totality of the circumstances, that the
appellant’s consent was not voluntary because the appellant was never given his
Miranda warnings, the appellant twice declined the officer’s request to
search, the appellant was handcuffed and under arrest when he consented, the
officers used coercive tactics to push the appellant to consent to the search,
and the officers threatened to vacate the appellant’s mother and young son from
the house during the search if the appellant did not consent).  The number of
officers present at the scene is significant in determining the validity of
consent.  Manzi v. State, 56 S.W.3d 710, 717 (Tex. App.—Houston [14th
Dist.] 2001), aff’d, 88 S.W.3d 240 (Tex. Crim. App. 2002).  “The Court
of Criminal Appeals has been critical of consent given in the face of numbers
of armed officers.”  Id. (citing Lowery v. State, 499 S.W.2d 160,
168 (Tex. Crim. App. 1973)).  Courts have considered the fact that the
appellant initially refused to give consent; however, courts have also
recognized the ability for a person to change his mind and later consent.  Manzi,
56 S.W.3d at 718.  Finally, courts have tried to balance the fact that a
suspect was not informed he could refuse to consent with the premise that
officers have no affirmative obligation to inform the suspect he may refuse to
consent.  Carmouche, 10 S.W.3d at 332–33; Manzi, 56 S.W.3d at
718–19.           

The
State cites to McAllister v. State, Champenois v. State, and Collins
v. State for the proposition that because Williams complied with Officer
Duncan’s request, the trial court should not have suppressed the evidence of
drugs.  See McAllister v. State, 34 S.W.3d 346, 350–351 (Tex. App.—Texarkana
2000, pet. ref’d); Champenois v. State, 874 S.W.2d 254, 258 (Tex.
App.—Houston [1st Dist.] 1994, pet. ref’d); Collins v. State, No.
14-06-00889-CR, 2007 WL 3287879, at *4 (Tex. App.—Houston [14th Dist.] Nov. 6,
2007, no pet.) (mem. op., not designated for publication).   The State urges
that it is permissible for officers to ask a suspect to remove an item of clothing,
such as a shoe, if a suspect voluntarily consents.  See Champenois,
874 S.W.2d at 258; Collins, 2007 WL 3287879, at *4.  Although in Collins
and Champenois the courts held that officers permissibly asked a suspect
to remove a shoe, the circumstances surrounding those cases are factually
different from the case at bar.  Champenois, 874 S.W.2d at 258; Collins,
2007 WL 3287879, at *4.  In Collins and Champenois, the suspects
never argued their consent was involuntary.  Champenois, 874 S.W.2d at
258 (“Officer Stone asked [appellant] if he would consent to be searched.
Appellant replied, ‘Sure, I consent to search’ . . . [appellant] also admitted
that he gave his assent.”); Collins, 2007 WL 3287879, at *4 (“Appellant
neither asserts nor cites evidence suggesting that his removal of his shoes was
anything other than consensual . . . .”).  Additionally, the appellant in McAllister
also voluntarily consented.  McAllister, 34 S.W.3d at 351.  The police
officer offered to give McAllister a ride home after the officer had arrested
the driver of the vehicle in which McAllister was a passenger.  Id.  The
officer explained he needed to conduct a pat-down of McAllister before he
entered the officer’s vehicle.  Id.  The court concluded that McAllister
indicated his consent by throwing his hands in the air.  Id.  

Here,
Williams physically and verbally indicated she did not want to comply with
Officer Duncan’s request.  In the findings of fact, the trial judge found that
“Williams refused, began crying, and said she did not want to pull out her
bra.”  This finding demonstrates that Williams did not simply and readily consent
like the suspects in Collins, Champenois, and McAllister.

            Before
Williams was searched, the trial court found she remained seated in the back of
the vehicle, she did not make any sudden movements, and she did not attempt to
escape.  Before Officer Duncan even asked Williams to step out of the vehicle,
the front-seat passenger had fled the vehicle, the other back-seat passenger
was pulled out of the vehicle and patted down, and the driver was searched and
arrested for possession of prescription pills.  Williams witnessed all these
events from the back seat of the vehicle.  The trial court found that at least
two other officers arrived on the scene to assist Officer Duncan, including one
female officer.  The officers arrived on the scene before Officer Duncan requested
that Williams pull out her bra and maneuver it.  There is neither a finding of
fact nor testimony from Officer Duncan to show that he informed Williams she
had the right to refuse to acquiesce to his request, or that he read Williams
her constitutional rights.  After Officer Duncan asked Williams to maneuver her
bra, she “refused, began crying, and said she did not want to pull out her
bra.”  Officer Duncan asked Williams a second time before she complied with his
request.  Although Williams was not under arrest, held at gunpoint, or
threatened with physical punishment, the State has not provided clear and
convincing evidence that Williams consented voluntarily.  Carmouche, 10
S.W.3d at 331.  After examining the totality of the circumstances leading up to
the search and the suspect’s reaction to the pressure of the situation, we
conclude that Williams did not voluntarily consent to Officer Duncan’s request. 


C

            The
State contends that even if we hold “an issue of search did not exist” or
Williams’s consent was not voluntary, Officer Duncan’s request for Williams to
maneuver her bra is still permissible because the request was less intrusive
than a pat-down search.  The State cites Bell v. Wolfish and McGee v.
State to support its argument that law enforcement’s interest can outweigh
the intrusiveness of the search.  See Bell v. Wolfish, 441 U.S. 520, 560
(1979); McGee v. State, 105 S.W.3d 609, 616 (Tex. Crim. App. 2003).  In Bell,
a prison guard was searching an inmate for contraband, and the search involved
an intrusive visual body-cavity search.  441 U.S. at 558.  In McGee, an
officer performed a search pursuant to a lawful arrest at a fire station, and
the search was also an intrusive visual body-cavity search.  105 S.W.3d at
615.  Although these cases discuss degrees of intrusion, the searches are
body-cavity searches, which are significantly different from a Terry
pat-down.  Thus, the cases the State cites do not support its position.  Accordingly,
we overrule the State’s issue on appeal and affirm the trial court’s ruling.  

 
          * * *

For
the foregoing reasons, we affirm the trial court’s judgment.








 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Yates, Brown,
and Boyce. (Yates, J. concurring)

Publish
— Tex. R. App. P. 47.2(b).









[1]
“‘Reasonable suspicion’ exists if the officer has specific articulable facts
that, when combined with rational inferences from those facts, would lead him
to reasonably suspect that a particular person had engaged or (soon will be)
engaging in criminal activity.” Garcia v. State, 43 S.W.3d 527, 530 (Tex.
Crim. App. 2001) (citing Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim.
App. 1997)).





[2]
“A pat-down search is substantially less intrusive than a standard search
requiring probable cause.”  O’Hara v. State, 27 S.W.3d 548, 550 (Tex.
Crim. App. 2000).





[3]
See, e.g., Sturchio v. State, 136 S.W.3d 21, 24 (Tex. App.—San Antonio
2002, no pet.) (explaining that an officer was able to conduct a weapon
pat-down of a suspect because she knew from experience that prostitutes
frequently carried small weapons like scissors or fingernail files). 





[4] In addition to its flawed
comparison with Johnson, the State improperly tried to link evidence of
flight to Williams.  In its brief, the State argues that courts consider
evidence of flight to decide if an officer had reasonable suspicion to detain
and search a suspect.  The record clearly indicates that it was the front-seat
passenger that exited the vehicle after it stopped.  Williams remained in the
back seat of the vehicle while Officer Duncan arrested Newman, and she never
tried to escape.